IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 19, 2005

# TROY NOLES v. MICHIGAN POWERSPORTS, INC. d/b/a CHAMPION MOTORSPORTS & CHAMPION POWERSPORTS

**Appeal from the Circuit Court for Macon County**
**No. 5030     John D. Wootten, Jr., Judge**

---

**No. M2005-00420-COA-R9-CV - Filed November 7, 2005**

---

This case involves a dispute over whether Tennessee courts have personal jurisdiction over two Michigan corporations regarding an alleged violation of the Tennessee Consumer Protection Act. The trial court found that Tennessee had personal jurisdiction over the Michigan corporations and the corporations filed an interlocutory appeal.  We find that the Tennessee Long Arm Statute provides Tennessee with personal jurisdiction over the corporations and that the decision comports with the requirements of due process; therefore, we affirm the decision of the trial court and remand the case for further proceedings consistent herewith.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

John Thomas Feeney and Shannon E. Poindexter, Nashville, Tennessee for the appellant, Michigan Powersports, Inc. d/b/a Champion Motorsports and Champion Powersports, Inc.

John M. Cannon, Goodlettsville, Tennessee, for the appellee, Troy Noles.

## OPINION

Troy Noles (Noles), a resident of Lafayette, Macon County, Tennessee, purchased the *Ohio Valley Circle Trader* in Indiana while traveling for his employment.  Pages 122 and 123 of that publication contained an advertisement for a "2003 Yamaha Banshee Buddy Pack Deal" from Champion Powersports.  The buddy pack included two Yamaha Banshee all-terrain-vehicles ("ATVs"), one trailer, and two helmets, for $39.00 per month, per vehicle, at 3.9% interest with zero down payment.

Upon returning to his home in Lafayette, Tennessee, Noles initiated contact with Champion Powersports by calling the toll-free number listed in the advertisement, in order to inquire about purchasing the advertised vehicles. Noles had never seen an advertisement for Champion Powersports or Michigan Powersports in a Tennessee publication nor did he access Champion Powersports' website. Noles had never conducted business with Champion Powersports or Michigan Powersports before that time, nor did he know anyone else who had.

During the telephone call to Champion Powersports, Noles spoke with sales representative, Kevin Lapp ("Lapp"). There were several conversations conducted during the sales transaction, including calls where Lapp contacted Noles at his home in Lafayette, Tennessee. During the course of these conversations, the parties discussed the magazine advertisement that led to the contract of sale for the ATVs. During one conversation, Lapp notified Noles that he did not qualify for the advertised financing but that Michigan Powersports might be able to reach an alternative arrangement.

Champion Powersports and Michigan Powersports are separate business entities, both located in the state of Michigan. Although the businesses rely on different financial institutions to obtain financing and credit for customers who require it, if one financial institution refuses to extend credit to a particular customer, the sales representative may submit the customer's financing application to the other business' lender. The alternative financing agreement is then drawn up on the documentation provided by whichever business' lender approved financing.

Instead of the advertised buddy pack financing, Lapp constructed an alternative agreement for Noles which provided for a buddy pack to include two ATVs and a trailer through financing institutions relied on by Michigan Powersports. Noles understood that the alternative arrangement required a $500.00 down payment and did not include the 3.9% financing rate provided for in the advertisement.

Noles accepted delivery of the ATVs and trailer from a Tora Corporation driver on or about March 13, 2003, in Lafayette, Tennessee. At the time of delivery, Noles inspected the equipment and signed the consumer credit paperwork from Michigan Powersports.

On October 9, 2003, Noles filed a Complaint in the Circuit Court for Macon County, Tennessee, against Champion Powersports and Michigan Powersports, alleging violations of the Tennessee Consumer Protection Act in relation to the purchase of the ATVs. Defendants filed an Answer on February 20, 2004, in which, Defendants specifically raised lack of personal jurisdiction as a defense, although the Answer was not denoted as a special appearance. On the same day, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction.

The trial court denied Defendants' Motion on January 10, 2005. However, the trial court recommended that this would be an appropriate matter for interlocutory appeal. Defendants filed an Application for Permission to Appeal pursuant to Tennessee Rule of Appellate Procedure 9, which the Court granted on March 14, 2005.

The sole issue raised by Appellants on appeal concerns whether Tennessee courts have personal jurisdiction over Appellants. Because the determination of personal jurisdiction is purely a question of law, this Court reviews the record *de novo* with no presumption of correctness. *Southwest Williamson County Cmty. Ass'n v. Saltsman*, 66 S.W.3d 872, 876 (Tenn.Ct.App.2001).

The plaintiff has the burden of establishing a *prima facie* case that personal jurisdiction over a defendant is proper. *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 854 (Tenn.Ct.App.2000); *Humphreys v. Selvey*, 154 S.W.3d 544, 548 (Tenn.Ct.App.2004). In determining a defendant's motion to dismiss for lack of personal jurisdiction, the court is required to construe the pleadings and the affidavits in the light most favorable to the plaintiff. *Rodell*, 42 S.W.3d at 548. Dismissal is only proper if all the specific facts alleged by the plaintiff collectively fail to establish a *prima facie* case for jurisdiction. *Rodell*, 42 S.W.3d at 548-549.

The trial court found personal jurisdiction over Appellants based on Tennessee's Long Arm Statute, Tennessee Code Annotated, Section 20-2-214. Tennessee courts have interpreted Tennessee's Long Arm Statute liberally, *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 377 (6th Cir.1968), and thus, Tennessee courts may exercise jurisdiction to the extent that the Fourteenth Amendment of the United States Constitution allows. *Rodell*, 42 S.W.3d at 855. Tennessee Code Annotated, Section 20-2-214, provides in relevant part:

(a)     Persons who are non-residents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the Court of the state as to any action or claim for relief arising from:

(2)     Any tortious act or omission within this state;

...

(5)     Entering into a contract for services to be rendered or for materials to be furnished in this state;

(6)     Any basis not inconsistent with the constitution of this state.

...

(c)     Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

Tenn.Code Ann., Section 20-2-214.

Tennessee Code Annotated section 20-2-214(a)(5) allows Tennessee to exercise personal jurisdiction over a non-resident in any action arising from "a contract for services to be rendered or for materials to be furnished in this state." In this case, the dispute arises from a contract for the sale of two ATVs and a trailer, where the parties signed the contract and agreed that the goods would be delivered in Lafayette, Tennessee.

Furthermore, the Sixth Circuit noted that under Tennessee Code Annotated section 20-2-214(a)(2), "even a single act by defendant directed toward Tennessee that gives rise to cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir.2001). The Western Section of this Court agreed with the reasoning and interpretation of the Sixth Circuit, holding in *Humphreys,* that a single contract for the sale of goods, personally delivered in Tennessee, could support a finding of minimum contacts sufficient to exercise personal jurisdiction, provided that the evidence presented by plaintiff created a *prima facie* case that personal jurisdiction over defendant was proper under the factors set forth in *Masada Investment Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn.1995). *See also Humphreys*, 154 S.W.3d at 552.

However, the decision to exercise personal jurisdiction must also be consistent with the Due Process Clause. Due process requires that a nonresident have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531-532 (Tenn.1992). Tennessee has developed a five-part test to evaluate the contacts between a defendant and the forum state. *Masada*, 697 S.W.2d at 334; *Humphreys,* 154 S.W.3d at 551. The test weighs: (1) the quantity of the contacts between the defendant and the forum state; (2) the nature and quality of those contacts; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in adjudicating the dispute; and, (5) the convenience of the forum to the parties. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Applying the *Masada* factors to the present case, it appears that the trial court's decision to exercise jurisdiction comported with the requirements of due process. Appellants contend that they are not registered to do business in Tennessee, maintain no office or sales force in Tennessee, and do not focus their advertising or promotions with the intent of attracting Tennessee customers. Appellants also assert that since their inception in 2001 and 2002, the companies have had no more than four Tennessee buyers out of approximately 5,900 customers. However, similar to the defendant in *Humphreys*, Appellants were aware that they were dealing with a Tennessee buyer prior to the formation of the contract, evidenced by the fact that the sales representative called Noles at his home on multiple occasions and because the parties agreed that the ATVs would be delivered and the contract would be signed at Noles' residence in Lafayette, Tennessee. The record establishes that Appellants purposefully availed themselves of the privilege of conducting business within the state of Tennessee by knowingly entering into a contract for the sale of goods with a Tennessee resident after numerous telephone conversations and after delivering the ATVs and trailer to Noles in Lafayette, Tennessee. Appellants' actions are of sufficient quantity and quality to constitute minimum contacts with the state of Tennessee.

In regards to *Masada's* third factor, Appellants' contacts with the state of Tennessee are directly related to Noles' cause of action. Appellants' contacts with Tennessee and the cause of action all stem from or relate to the parties' contract for the sale and purchase of the ATVs and trailer.

Under *Masada's* fourth factor, we must determine the interest of Tennessee in adjudicating the dispute. The Sixth Circuit has stated that "when the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted." *S. Mach. Co.*, 401 F.2d at 385. We therefore find that Tennessee has a strong interest in adjudicating Noles' Complaint.

Under the final factor, the convenience of the forum to the parties, Appellants made no argument as to the inconvenience which they would experience if forced to litigate this matter in Tennessee. But as noted in *Humphreys*, although we can assume that litigation of this matter in Tennessee may be difficult for non-residents, that alone is an insufficient basis to deny jurisdiction in light of the satisfaction of all of the other *Masada* factors. *Humphreys*, 154 S.W.3d at 553. Based upon Appellants' decision to enter into a contract with Noles in the state of Tennessee, we find that Appellants could have reasonably anticipated being called into court for disputes arising from the contract between the parties, *Masada*, 697 S.W.2d at 334 (citing *World-Wide Volkswagon Corp.*, 444 U.S. at 297), and that the exercise of jurisdiction in this case does not violate the "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.

We must also note that Appellants heavily rely on the decision in *Gregurek v. Swope Motors, Inc.*, 138 S.W.3d 882 (Tenn.Ct.App.2003). In *Gregurek*, defendant was a Kentucky automobile repair shop whom plaintiffs, residents of Texas, had repair their vehicle as they passed through Elizabethton, Kentucky from Illinois to Texas. *Gregurek*, 138 S.W.3d at 883. After plaintiffs returned to pick up their repaired vehicle, it caught fire as plaintiffs were traveling through Tennessee. *Gregurek*, 138 S.W.3d at 883. This Court held that Tennessee did not have personal jurisdiction over defendant because defendant's sole contacts with the state consisted of seventeen customers with Tennessee addresses and the occasional attendance of its employees at automobile auctions in Nashville, Tennessee. *Gregurek*, 138 S.W.3d at 885. However, unlike this case, the Court in *Gregurek* found that there was no basis for jurisdiction under Tennessee's Long Arm Statute since none of the acts giving rise to the claim occurred in Tennessee and defendant's contacts with Tennessee were too attenuated to fall under subsection (4). *Gregurek*, 138 S.W.3d at 885-886. The facts in *Gregurek* are too dissimilar as to be controlling in this case.

Accordingly, we conclude that the trial court did not err in determining that it had personal jurisdiction over Appellants and thereby denying Appellants' motion to dismiss for lack of personal jurisdiction. The judgment of the trial court is hereby affirmed and the case is remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed against Appellants.

_____
WILLIAM B. CAIN, JUDGE